Soribner, J.
This is a petition in error by which it is sought to reverse a judgment of the court of common pleas rendered in behalf of the defendant in error here, in a case brought in that court by the plaintiff in error against defendant in error. The cause of action is stated substantially in a single paragraph of the petition, which I will read: After reciting that the defendant was a corporation organized and existing under the laws of the state of Ohio, and that at the time of the grievances complained of in his petition, the defendant owned and operated a system of street railway for the carrying of passengers in the city of Toledo, Ohio, and that one of the railway tracks of said system extended in and along the roadway of one of the public thoroughfares of said city known as Lagrange street, from Bancroft street to Champlain street, over which track cars are propelled by electric power, the plaintiff proceeds with these averments:
“On the 16th day of March, 1891, plaintiff at about the hcur of 6.30 o’clock A. M. of said day, was driving his horses and wagon on said Lagrange street from said Bancroft street towards said Champlain street. Said wagon was loaded with breadstuffs. At said time one of the cars *396 of said defendant, known as No. 5, in charge and under control of said defendant's agent, was traversing said track from said Bancroft street towards Champlain street, at an unlawful rate of speed, while plaintiff was cautiously and carefully driving his said horses and wagon as aforesaid, said agent and employe of defendant did at or near the intersection of Seneca street with Lagrange street, carelessly, unlawfully, negligently, and forcibly run said car against the rear end of said wagon, overturning the same, spilling and destroying said breadstuffs, of the value of $14,36, breaking and bending the gearing and wheels, scratching and breaking the box of said wagon, and breaking and tearing the harness upon said horses; all without fault upon the part of plaintiff, to the damage of plaintiff in the sum of $134.36.”
The defendant answered the allegations of the plaintiff’s petition, admitting that it was a street railway company, •operating a street railway as charged in the petition; admitting also that the car came in contact with the wagon of plaintiff; but denying that the injury was occasioned by the ■default of defendant, but alleging that it was occasioned by the negligent, careless and wrongful acts of plaintiff. There were some amendments filed to this. The plaintiff replied, denying that he had been guilty of any contributory negligence, or had m any manner departed from the proper course of procedure in operating his wagon upon the street car tracks of defendant. There was an amendment to the answer of defendant, subsequently filed, in which it set forth section No. 605 of the Codified Ordinances of the city of Toledo, in these words:
‘‘The cars running on any such railway shall be first entitled to the track, and any other vehicle on such track shall turn out when any car comes up, so as to leave the track unobstructed; and the driver of such other vehicle refusing so to do, when requested by the driver of such car, shall incur a fine, to be recovered in a proper court, of not less than three nor more than ten dollars.”
There was a further amendment by the plaintiff of his pe *397 'tition, in which section 604, paragraph 7, of the Codified Ordinances of the city was pleaded. That was in these words:
“The conductors or drivers on each car shall be careful, sober, prudent men, and they shall keep a vigilant watch for all teams, carriages, persons on foot, and especially women and children, either on the track or moving parallel with or toward it, and on the first appearance of danger the car shall be stopped within the shortest time and space possible.”
There is still another amendment to these pleadings, which I will not stop to read, setting out some further provisions of the ordinances of the city.
Upon the issue made between the parties the case was tried to the court and jury at the April term, 1892. Considerable testimony was submitted to the jury, bearing upon the questions at issue. Certain requests for instructions to the jury were submittted upon both sides, some of which were given and some of which were refused. The jury,after having- heard the testimony, the arguments of counsel and the instructions of the court, returned a verdict m favor of the defendant. There was a motion for a new trial assigning various grounds. That motion was overruled, and judgment was rendered upon the verdict in favor of the defendant below as well as the defendant here. The' testimony was embodied in a bill of exceptions, and is before us now as a part of the petition in error.
It is claimed upon the part of the plaintiff in error, the plaintiff below, that upon all the testimony submitted in the case below, the verdict should have been in favor of the plaintiff; that the court erred in giving certain instructions asked by the defendant below, and in refusing certain instructions asked by the plaintiff below; and that the court erred in overruling the motion for a new trial, upon the ground, not only of the errors so assigned, but also for the reason that the verdict was contrary to and was not sustained by the evidence submitted in the case.
*398 Upon the' trial of the cause the plaintiff was sworn and examined quite fully as a witness, and he testifies, among other things, as follows:
“When I got on the corner of Bancroft and Lagrange, I stopped my horses, and looked up that way towards Sherman street, to Bee if there was a car coining or not. The street was in such a bad condition I couldn’t see without stopping. I got struck crossing there once, so I looked for a car to see if there was a car coming, to let the car pass. But this morning I didn’t see no car coming, so I went on in the track; and I was down about two blocks, I heard a bell. Of course,the bell didn’t sound very loud to me; the wind made it come towards me, and drove the sound away. I heard the bell, but I thought it was a milk bell, so I got up on the left side, and looked out of the wagon. I couldn’t look through the wagon, and looked out on the side. I seen the car coming, and quick set down again, pulled my horses to the right side — that is, coming down from Bancroft street. As soon as I had two wheels out, the car come along, knocked against the wagon, and broke those yoke straps that go from the yoke to the collar and hold the wagon back' — broke those two straps going from the collar to the belly-band — ■■ them four they broke, so I couldn’t regulate the wagon any more; the wagon had to go any way he wanted. So the wagon went towards the ditch, and upset,
“Q, Before you go any further, just tell the jury what kind of a wagon this was? A, This here wagon I paid $300 for it when I got it newly made a year and a half ago. It was a big top wagon, with glass in the top — that is, around the top — and below it was panels. This wagon, of course, was heavily loaded with bread and cakes, and one thing and another.
“Q. You say that the wagon was fitted with glass— around what part of it? A. On both sides, in the back part glass all around, and one in front.
, “Q. Around the three sides and top of the wagon there was glass? A. Yes. sir.
“Q. In the rear what was there? A. There was one solid panel about four feet high, eight feet long — 'that is, so long the wagon is. Tha wagon is, I guess, seven feet high. It was about five feet high — panel—and eight feet’ long, all one solid piece, with gold painting on it.
*399 “Q. How far was the car behind you when you Srst heard the bell? A. It must have been about forty feet — that is, when I got up and seen the oar, when I heard the bell.
*“Q. Did you look more than once? A. I did not.
According to the statement of the plaintiff, it would seem that he did not look for the car after turning in upon the track, until he heard the bell. Then he looked and saw, according to his judgment,that the car was about forty feet away, coming from the rear towards his wagon.
The defendant then called a number of witnesses, among them several business men of the city who had taken this early car in order to get to their places of business, who testified quite fully as to the occurrence of the accident* For example, Mr. Howard M. Jump, testifies that while upon the car on the occasion spoken of, that his attention was called or attracted by the ringing of the bell. When in-. quired of us as to where he first noticed Mr. Siek’s wagon he says:
“My attention wai attracted by the continual ringing of the bell after we had crossed Bancroft street. I looked ahead to see what was the matter, and saw Mr. Siek’s wagon in the track.
“Q. Where did you first hear the bell sound? A. I noticed the bell, but I paid no particular attention to it, but when we were passing Bancroft street, I wondered why it was. I knew there was no cars there. I thought it was funny that he was ringing the bell. I knew why it was then, when I saw the wagon.
“Q. When your attention was first attracted to the wagon how far was the wagon ahead of the car? A. Quite a distance ahead. I should say about a block, maybe. It was going on a trot. It might have been more than a block, because there are short blocks in there.
“Q. Roughly, how many feet was it? A. It would be about — 'I couldn’t figure the feet exactly, I should think'a couple of hundred feet, or such a matter.
“Q. How far did it get before the wagon was struck? A It went down to very near the switch.”
*400 After he said that the wagon was struck very near the switch, he is inquired of — ■
“Q. How much of the time was the gong sounded from the time it left Bancroft street until the time of the collision? A. It was ringing right along all the while until the motorman stopped if, and put on his brakes. It was about fifty feet back of the wagon. He saw the wagon was not going to get out of the road, so he put on his brakes.
“Q. Do you know where the motorman turned off the power? A. It was — I could show about the place, if I was there. The power was off at Bancroft street. The car runs down its own weight, that street.
He is asked this question
“Q. What did you notice Mr. Siek do? A. After we got very close to him, I noticed him turn around and look through the left side of the wagon at the car, and I thought there was plenty of time — I saw him look out at the left side of his wagon at the car. It was just about the same time that the motorman turned off his brake; it was,I should say, about fifty feet away.
“Q. Now then, what did Mr. Siek do? A. I didn’t notice that he did anything. The wagon staid right in the track, as near as I could see, until it was hit — as near as I cculd see, the wagon was in the track at the time it was hit.
A number of other witnesses who were on the car testify to this same effect,
The plaintiff was recalled, but simply to deny that he had looked back more than once while he was upon the track and the car was approaching from behind.
Now, upon this evidence, submitted to the jury, the verdict, as I have said, was for the defendant. After a very critical examination of the entire testimony from beginning to end, it seems to us quite clear that the jury were fully warranted in returning a verdict for defendant, as they did. It seems to us, upon the plaintiff's own testimony, that he failed to exercise proper care in traveling along a street railway track, operated by motor cars; that he was bound in fairness and in the exercise of proper care to keep a bet *401 ter lookout for the approach of electric cars than he did. He admits that he traveled along that track some two blocks and a half without once looking back to see whether a car was approaching. He further admits that he did once hear the gong, and supposed that it was a milk bell; but when he finally heard th6 gong, that the car was about forty feet back, and he got form the track as soon as he reasonably could. But the roadway was in a bad condition, the planks were broken somewhat, the track and the street had holes in them, and it was with difficulty that he could make his way from the track, and before he could leave it, he was struck by the approaching car. The testimony on the part of defendant shows that the power had been cut off, and that testimony is uncontradicted. It is proven by several witnesses to have been cut off by reason of the fact that the car was passing down a declivity, and was running by force of its own momentum; and it appears by the uncontradicted testimony of half a dozen witnesses, perhaps- — -perhaps not so many as that, but a large number of witnesses wholly disinterested in the case — -that the gong upon that car was being sounded by the motorman continuously from, the region of Bancroft street until the collision occurred. And the testimony of the motorman as well as of other witnesses, tended to show- that the motorman was acting evidently upon the assumption that the plaintiff could hear the gong of the approaching car, and would, in the exercise of ordinary and reasonable care, get out of its way before any collision could occur. Ordinarily, of course, the employe operating an electric car upon the streets, cannot be expected to stop his car every time a man is walking or a vehicle is being driven in front of the passing car, upon the assumption that he or it cannot get out of the way, Ordinarily a man has the right to assume and to expect that a wagon or a carriage, or any vehicle, driving in front of an electric car, with a gong sounding so as to be heard a block or two away, will, *402 in the exercise of due and ordinary care, get out of the way of the approaching car, so that it will not be necessary for the operator to stop the car and wait for him to get out of the way, or wait to see if the traveler will get out of the way. It appears to us that under the circumstances as they are detailed in this testimony, uncontradicted, the motorman and the conductor had a right to understand and to believe — take it for granted, that Mr. Siek, driving his wagon upon the railway track at that time, would in due time vacate the track so that the car could pass on without any injury to him. But when the operator found that for some reason or other, not known to them perhaps, the plaintiff was continuing in the track, and that down to a point when, according to the plaintiff’s testimony, the car was within forty feet of the wagon, and he had made no movement to leave it, they set themselves to work to endeavor, by the application of the brakes, the motive power having been cut off of it, to stop the motion of the car, and they came so near stopping it that it went but a foot or two beyond the point of contact with the carriage. And although, of course, there was some injury to the carriage, evidently it was comparatively slight and not such as would have resulted from a regular collision; because if there had been a regular collision with tüe car under full headway, the car would undoubtedly have been demolished.
There were some requests made of the court, which were refused, and some instructions given which were excepted to, which are noted. In the charge of the court, which seems to have been quite a fair charge, at least so far as the plaintiff was concerned, there is noted on the margin of the general charge of the court a point that the plaintiff in his argument objected to. There is no objection noted in the record at all to that part of the charge, but this part is marked:
“If the plaintiff's evidence discloses any want of care on'' *403 his part which contributed to his injury, then, before he can recover, he must show by a preponderance of evidence upon the whole case, that his negligence did not contribute to his injury; otherwise the burden is upon the defendant to show that plaintiff’s negligence caused his injury, or contributed to it in any degree. ’ ’
Special objection is laid upon the statement of the court in this proposition that the burden is upon the defendant, upon certain contingencies, to show that the plaintiff’s negligence caused the injury or contributed to the injury in any degree. The language “or contributed to it in any degree,” is objected to here as furnishing or submitting a wrong rule of law bearing upon contributory negligence to the jury. In the first place, this language is taken from a ruling made by the Supreme Court as contained in a reported case; and in the second place, if there had been any qualification or modification of that language, the whole charge shows in the special requests that were actually given, that the jury were instructed so fully upon that point that they could not have been misled by what the court said.
Again, this proposition as stated by the court, is excepted to
“The use of electricity upon these roads, of course, increases the amount of care necessary to be used by those traveling the streets. You will take that matter into account, considering only the evidence in the case, and find the facts from that. ”
We cannot see any legal objection to this instruction as given by the court. The jury’s attention is called to the fact that the use of electricity upon these roads increases the amount of care necessary to be used by those traveling the streets, and they are called upon to take that fact into consideration.
There is an exception taken to the fourth request of the defendant as given by the court, and that request is as follows:
*404 “From the necessity of the case, a street railway company, for the operation of its cars along the public streets, has certain rights different from those of the general public using the same streets.
“One of the public has a right to drive his team and vehicle upon the track of such a railway, and to pass along it lengthwise of it, as well as to cross it at the intersection of the streets. But the right of such person as the plaintiff in this case, to be upon the track, and to pass along it, is abridged. The street railway company has the exclusive right to such part of the track, at any time its cars are passing, or just about to pass, and all others then upon such track are then and there bound to leave it to the unobstructed use of the company.
“This right is permitted to the street railway companies, because the car can move to and fro only on the parallel lines of track laid down for it, and cannot turn from them; so that others using the street, must use reasonable care and diligence to get out of the way of approaching street railway cars. ”
So far this statement is largely argumentative, no doubt about that; but we see no valid objection to the giving of this instruction to the jury. Then follows the rule of law which the court gave, resulting from these premises:
“And if the jury find from the evidence, that the plaintiff did not use ordinary care and diligence to keep out of the way of the street car in this case, then your verdict should be for the defendant.”
That is the proposition of law which is embraced in this request; the other is a matter of discussion or presentation of the reasons leading up to a statement of that proposition.
The fifth request is also excepted to:
“The jury are instructed that the track of a street railway is susceptible of a common use of the street railway company and those of the public who are using the track with their vehicles, so far as that, when the cars of the company are not upon it, at any place, it may be occupied with a team and vehicle of the ordinary kind. Yet, as the power to make the track clear for the use of the street railway' *405 company, is solely with the individual temporarily occupying it, and as his right to use it is only when it is clear, there is upon him the duty of using reasonable care, skill and diligence to keep such track clear, free, and unobstructed by his vehicle, for the use of the street railway company. As it is essential to the convenient and useful working by the defendant of the street railway, that there be no unnecessary stoppage of transit, and a reasonable rate of speed continuously kept up, it was incumbent upon plaintiff in this case to so manage his vehicle as to cause no unreasonable or unnecessary hindrance thereto.
“As the car cannot turn off of the track to go by, and the plaintiff had the power to turn off the track to let it go by, it was the duty of the plaintiff to use reasonable care and diligence to turn off the track, and leave free and unobstructed passage to defendant’s car,”
It seems to us that is a correct proposition, especially when taken in connection with the other points submitted in the general charge of the court.
The eighth proposition given was objected to:
“The jury are instructed that street railways have become a business necessity in all cities of considerable size; that greater and better facilities, and a higher rate of speed are being constantly demanded for public convenience. The movement of cars by electricity along the streets of a city is attended with danger, and renders a higher measure of care necessary, both on the part of the street railways and those using the streets in the ordinary manner. It is the duty of the railway companies to be watchful and attentive, and to use all reasonable precautions to give notice of the approach of their cars. Its failure to exercise the care which the rate of speed and the condition of the street demands, is negligence. On the other hand, new appliances, rendered necessary by the advance in business and population, impose new duties upon the public. And it is the duty of the public using vehicles upon the street, to use reasonable care to avoid unnecessarily obstructing or occupying the tracks of street railways in their operation, and to avoid collisions between such vehicles and such street railway cars, And if the jury find, from the evidence, that *406 the plaintiff did not use such reasonable and ordinary care to avoid the injury complained of in this action, then your verdict must be for the defendant.”
Upon the general doctrine stated in that request, I will cite without reading, a note found in Booth on Street Railway Law,at page 432 — section 315, note 1.
The tenth request as given was also excepted to:
‘‘If the jury find from the evidence that the ' plaintiff heard the warning bell or gong of the street railway car, or by the exercise of reasonable care and diligence might have heard it, then it was the duty of plaintiff to exercise reasonable care and diligence in leaving such track for the passage of the street railway car, in time to avoid a collision; and if the jury find from the evidence that the plaintiff failed to exercise such reasonable care and diligence, then your verdict must be for the defendant.”
We think that was a correct proposition — one quite familiar in the law of negligence.
The eleventh also was excepted to:
‘‘The plaintiff can not be excused from the duty of looking back, upon receiving such warning, or failing by the exercise or want of care to receive such warning, by the fact that there were closed sides to the vehicle.”
We do not understand upon what principle it can be claimed that a man driving along a street railway track in a covered carriage is excused from the fact that he is in a covered carriage, from looking back to see if cars approaching from behind him. He must know, he is bound to know, that cars are liable to approach from behind him as well as from the other direction; and it is as much his duty to look in the one direction, as we understand the law, as it is in the other.
The twelfth also was excepted to:
‘‘If the jury find from the evidence, that plaintiff and defendant were both negligent, and that the negligence of both contributed directly to cause the injury complained of in this case, then your verdict should be for the defendant. ”
*407 That is a statement of the ordinary doctrine that contributory negligence shall prevent a recovery by the party injured by the negligence of his adversary.
There were certain exceptions by plaintiff to the refusal of the court to give certain requests submitted by the plaintiff below, and they may be noticed in a few words. The first request refused was this:
“The defendant has no right to run its cars upon said street at a greater rate of speed than the .rate of speed of other vehicles for carrying passengers, drawn by horses, in the absence of an ordinance to the contrary.”
We think that the court would have erred in giving that request in the form in which it is submitted, Unless instructed to the contrary, I should say that there was in the city ordinance regulating the movement of electric cars, some provision regulating the rate of speed; but in the absence of’ any such regulation, I suppose that all that would be required of these companies would be to use' ordinary and reasonable care, in reference to the existing circumstances, in the running of their cars.
No. 3 was refused:
“If the plaintiff had just and sufficient reason, from observation of the tracks when he drove on, to believe that no car could be sufficiently near as to desire to pass him at the point of said accident, and plaintiff drove out'of the track of defendant as soon as warned of the approach of defendant’s car, and without unnecessary delay, plaintiff was not guilty of contributory negligence.”
This amounted to a direction to the jury that if the plaintiff supposed, upon reasonable grounds, that there would be no car which would find it necessary to pass along the track where he was driving, then there was no necessity for his keeping any lookout for any car. We think that would scarcely do.
5. “The fact that a vehicle being unnecessarily driven upon the track does not of itself constitute contributory negligence.
*408 It seems to us that this is an immaterial proposition:
“The fact that a vehicle is unnecessarily driven on a track, does not of itself constitute contributory negligence. ”
Strictly, perhaps, that may be so. It becomes contributory negligence, where, having^driven on a track, a proper lookout is not observed to avoid an approaching car,
Those are the only requests that were refused, except the eighth:
“It is a well settled rule of the law of negligence that the plaintiff may recover, notwithstanding his own negligence exposed him to the risk of injury, of which he complains, if the defendant, after he became aware, or ought to have become aware, of plaintiff’s danger, failed to use ordinary care, to avoid injuring him, and he was thereby injured. The jury are therefore instructed that though they should find that the plaintiff was negligent in driving and being upon defendant’s track, that if after defendant’s motorman became aware of the negligent position of plaintiff, failed to use ordinary care to avoid injuring plaintiff, and that by reason of the failure of said motorman to use ordinary care, plaintiff was injured, your verdict must be for the plaintiff. ”
The vice in this request is found in this line: “Or ought to have become aware of plaintiff’s danger.” It is a doctrine of the law that if a party be negligently exposing himself to danger, and he is injured, and the party who injured him observed the danger, and might and should therefore have governed himself accordingly so as to avoid injuring him, the party committing the injury may be liable notwithstanding the party injured has been negligent; but we know of no rule of law -that makes a party liable in such case as that upon the doctrine that he “ought to have known” that such party was acting negligently. If this clause had been omitted,;it occurs to us that the request- should have been given; that is,if the defendant,after he became aware, failed to use ordinary care, then the liability supposed would arise;-but it was not competent with the further lim *409 itation “or ought to have become aware of plaintiff’s danger.’’ We do not understand that there is any duty imposed upon a person who is lawfully pursuing a legitimate business in an ordinarily careful manner, to know that •somebody is exposing himself to danger. If he knows the •danger, he is bound to exercise care, but he is not bound to know the danger per se from a negligent or careless act on ihe part of the person who is injured.
These comprise all the grounds that have been called to .©ar attention as grounds of error in this case. The case is aim interesting and instructive one, and we have been very much instructed by the very careful and able brief prepared by counsel for plaintiff in error, and we have given the case al! the thought in our power.
Our conclusion is, that the judgment must be affirmed.